[No. 12662. Department One. — September 5, 1890.]

## D. HENSHAW WARD, ADMINISTRATOR, ETC., APPELLANT, *v.* F. H. WATERMAN ET AL., RESPONDENTS.

REFORMATION OF TRUST AGREEMENT — MISTAKE — CONTRACT BETWEEN BENEFICIARIES — INTERVENTION IN CREDITOR'S SUIT — DEMURRER TO COMPLAINT OF INTERVENOR. — In a suit in equity by a judgment creditor of a beneficiary, brought against such beneficiary and his trustee to reach an undivided interest of the beneficiary in certain lands held by the trustee under a declaration of trust, a complaint in intervention by another beneficiary, which shows that prior to the conveyance to the trustee and to the declaration of trust, a copy of which is attached to the complaint, the several persons named in the declaration as beneficiaries were the equitable owners of the land in the proportions named in the declaration, and had caused and procured the legal title to be vested in the trustee for the purpose of sale and distribution of proceeds, under an agreement that a declaration of trust should be made showing the nature and character of the trust, and the interests of the respective parties; that it was also agreed prior to said conveyance and declaration between the intervenor and the defendant debtor that said declaration should show that the proceeds of sale of the debtor's interest were to be paid to the intervenor, until a debt due from him to the intervenor should be fully satisfied, and that the surplus should be paid to the debtor, and that the debtor would have the declaration show such agreement; that when the declaration was executed the intervenor was absent from the state, and that his attorney in fact who executed it on his part in his absence was ignorant of the arrangement; and that by a mutual mistake on the part of the intervenor through his representative, and of the debtor, the declaration failed to state the truth, and showed that the whole proceeds of sale of the debtor's interest were to be paid

to the debtor, — states a sufficient ground for intervention and for a reformation of the declaration of trust, and a demurrer thereto should be overruled.

ID. — PARTIES — DECLARATION OF TRUST — SEVERAL CONTRACT. — Such complaint in intervention is not demurrable on the ground that the declaration of trust could not be reformed in the absence of other beneficiaries who were not parties to nor interested in the particular agreement sought to be reformed. As to each of the separate interests provided for in such declaration of trust, the contract or declaration is several and not joint, and to reform it as to one of the separate interests, it is only necessary to make those persons parties who are interested in the particular interest in respect to which the reformation is sought.

ID. — PARTIES TO MISTAKE — OBJECTION PERSONAL TO TRUSTEE — RIGHTS OF ATTACHING CREDITOR. — Where the interests under a declaration of trust are several and not joint, and there is a mistake common to the parties beneficially interested in that particular interest, the instrument may be reformed in that particular, and the mistake need not be common to all the parties who executed the instrument; and it is immaterial whether they had knowledge of it or not; nor does it lie in the mouth either of a beneficiary debtor, or of his attaching creditor, to object to the reformation of the declaration of trust, on the ground that the trustee did not share in the mistake, he being a party to the suit and not making such objection, which, if tenable at all, is purely personal to himself.

ID. — TRUSTEE'S KNOWLEDGE OF MISTAKE. — It is a matter of entire indifference to the trustee of a mere naked trust, not coupled with any interest, who will be entirely unaffected by the reformation asked for, whether he shared in the intention of the parties beneficially interested or knew of the mistake or not, on account of which the reformation is sought.

ID. — AGREEMENT AS TO TERMS OF TRUST — MEETING OF MINDS — PRESUMPTION — EXECUTION BY ATTORNEY IN FACT. — Where it is shown that the minds of the parties had met and agreed upon what was to be done when the time came to act in executing the declaration of trust, in the absence of proof to the contrary the law presumes that they remained in the same condition of agreement until the act was done; and it is not requisite that the mind of the attorney in fact of one of the parties, who was authorized merely to sign the name of his principal to the agreement, but was charged with no discretion as to its terms, and who intended only to declare such a trust as he supposed the parties had agreed upon, should meet in agreement with the other party at the time of signing the declaration.

ID. — REVISION OF MUTUAL MISTAKE. — A mutual mistake in and as to an instrument itself, in failing to have it embody what the parties had actually agreed should be inserted therein, is such a one as may be revised on the application of the party aggrieved, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value, as provided in section 3399 of the Civil Code.

ID. — EVIDENCE — PROOF OF MISTAKE — RULE FOR TRIAL COURT — REVIEW ON APPEAL — CONFLICTING EVIDENCE. — The rule that the evidence to

reform a written instrument on the ground of mistake is to be so clear and convincing as to leave no room for doubt applies to the mind of the trial court, and not to the review of its findings by the appellate court; and where the evidence tending to prove the alleged mistake, if standing alone, without contradiction, would make out a *prima facie* case, the appellate court will not reverse the judgment on the ground that such evidence is contradicted by other evidence, since the right to pass on the credibility of witnesses is not vested in the appellate court.

ID. — STATUTE OF LIMITATIONS — EXTINGUISHMENT OF LIEN — AGREEMENT TO PAY BARRED DEBT — OBJECTION BY ATTACHING CREDITOR. — A judgment creditor who seeks to reach an equitable interest of the judgment debtor by virtue of an attachment levied subsequently to the trust agreement under which the property is held cannot object to a reformation of such trust agreement to conform to a prior agreement between the debtor and another beneficiary that the proceeds of sale of such equitable interests should be applied in payment of a debt due to such other beneficiary, on the ground that an assignment of the equitable interest for the security of such debt had become extinguished by lapse of time, before the trust agreement was executed, and that the agreement sought to be enforced was for the payment of a debt which was barred by the statute of limitations. the plea of the statute being a personal privilege of the debtor, which he might waive, by a new agreement for security, as against the plaintiff, who had no enforceable right or lien at the date of the creation of the trust.

ID. — RELATION OF JUDGMENT REFORMING TRUST AGREEMENT — EQUITY MAXIM. — A judgment reforming a declaration of trust proceeds upon the theory that it ought to have been so written in the first instance, and must, if sustained, cause the instrument to read and operate as reformed, as and from the original date of the declaration of trust, in accordance with the principle that equity presumes that that which ought to have been done was done, and gives it force and effect as if done.

ID. — LIMITATION OF PROCEEDING TO REFORM TRUST — DISCOVERY WITHIN THREE YEARS. — Where it appears that the mistake in the declaration of trust was not discovered until an attachment was levied by the plaintiff, less than three years before the commencement of suit and the filing of the complaint of intervention, the claim of the intervenor to have the declaration revised or reformed is not barred by section 338, subdivision 4, of the Code of Civil Procedure.

EXPRESS TRUST — TITLE OF TRUSTEE — INTEREST OF BENEFICIARY — ATTACHMENT. — A conveyance upon an express trust for the management and sale of real property and disposition of its proceeds among certain beneficiaries named, pursuant to subdivision 1 of section 857 of the Civil Code, vests the whole title in the trustee, both legal and equitable, by virtue of section 863 of the same code; and the only right that any beneficiary has is to share in the proceeds of the rents and profits when realized, and of the sale of the land when sold, and his only remedy is to enforce the execution of the trust. He has no attachable interest in the land.

ID. — RIGHT OF ATTACHING CREDITOR — LIEN OF ATTACHMENT. — An at-
taching creditor can acquire no greater right in attached property than
the defendent had at the time of the attachment; and if the property is
in such a situation that the defendant has lost his power over it, or has
not yet acquired such interest in or power over it as to permit him to
dispose of it adversely to others, it cannot be attached for his debt; and
even if the debtor has an equitable interest in land subject to attach-
ment, the lien of the attachment must be subject to all existing equities.

INTERVENTION — AMENDMENT AT TRIAL TO CONFORM TO PROOFS — DISCRE-
TION. — It is within the discretion of the trial court to allow an inter-
venor to amend his complaint at the trial to conform to the proofs, and
it is not error to allow such amendment.

APPEAL from a judgment of the Superior Court of
Alameda County.

The facts are stated in the opinion of the court.

*Stanly, Stoney & Hayes*, and *J. Walter Ward*, for Ap-
pellant.

Equity will reform a contract only when, after refor-
mation, it will express the understanding of both parties
at the time. (*Ledyard* v. *Hartford F. Ins. Co.*, 24 Wis.
496; *White* v. *Williams*, 48 Barb. 222; *Wilson* v. *Stray-
horn*, 26 Ark. 28; 1 Story's Eq. Jur. 171, note *a*.) The
mistake must be a " mutual mistake of the parties," that
is, a mistake common to all the contracting parties, one in
which they all participated. (Kerr on Fraud and Mis-
take, 422; *Lyman* v. *United Ins. Co.*, 17 Johns. 373; *Nevius*
v. *Dunlap*, 33 N. Y. 676; *Wemple* v. *Stewart*, 22 Barb. 154;
*Ruffner* v. *McConnel*, 17 Ill. 212; 63 Am. Dec. 362; *Gor-
dere* v. *Downing*, 18 Ill. 492; *Bellows* v. *Steno*, 14 N. H.
175; *Barfield* v. *Price*, 40 Cal. 542.) But notwithstand-
ing a mutual mistake of the parties to an instrument,
the instrument cannot be reformed unless it be made to
appear clearly to the court what was the exact contract
which it was the intention of the parties to make.
(Lead. Cas. Eq. 2, 981; *Tesson* v. *A. M. I. Co.*, 40 Mo.
33; 93 Am. Dec. 293.)

The written instrument is presumed to correctly ex-
press the intention of the parties executing it, and if it

be impeached for mistake, the fact of mistake must be established by clear, convincing evidence beyond a reasonable doubt. (*Moran* v. *McLarty*, 11 Hun, 66; 75 N. Y. 26; *Mead* v. *Westchester Fire Ins. Co.*, 64 N. Y. 453; *Miaghan* v. *Hartford Fire Ins. Co.*, 12 Hun, 321; *German American Ins. Co.* v. *Davis*, 131 Mass. 316; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240; *Nevius* v. *Dunlap*, 33 N. Y. 676; *Cox* v. *Woods*, 67 Cal. 317; *Leonis* v. *Lazzarovich*, 55 Cal. 54; *Lestrade* v. *Barth*, 19 Cal. 675; 1 Story's Eq. Jur., secs. 152–159; *Stone* v. *Shirk*, 1 Watts & S. 195.) This rule of equity exempts our case from the operation of a practice of this court to sustain the decision of the court below upon an issue of fact when it has any evidence whatever to support it. (*Potter* v. *Potter*, 27 Ohio St. 84; *Ford* v. *Osborne*, 45 Ohio St. 1.) If the declaration of trust could not be reformed in the absence of Haggin, Mills, and the Dyers, or if the case made by the intervenor did not entitle him to a reformation of it in this action, the plaintiff should have had judgment; for "until the deed is reformed the court is bound to act upon it as it exists, although fully satisfied that it is at variance with the intention of the parties." (1 Story's Eq. Jur. 164 d; Kerr on Fraud and Mistake, 429; *De Witt* v. *Duncan*, 46 Cal. 343; Civ. Code, secs. 852, 1625, 2253, 2254; Code Civ. Proc., secs. 1856, 1971.) If the alleged agreement between Waterman and Stanford had been valid and enforceable, Stanford's remedy would have been a specific performance of the agreement, and not a revision of the declaration of trust. But the agreement between Stanford and Waterman, not being in writing, was not valid or enforceable.

*J. E. Foulds*, for Defendants and Respondents.

All the interests of the various parties were several in their character. The other beneficiaries, D. O. Mills, E. H. Dyer, E. Dyer, and J. B. Haggin, had no concern whatever with the interests designated to be in Stanford

and Waterman, and it would have been an idle ceremony to have made them parties to this intervention, for the reason that their rights are in no way affected by it. As to them, the instrument remains the same after as before revision, — "the law neither does nor requires idle acts." (Civ. Code, sec. 3532.) When lands are held under an express trust, the whole title is in the trustee. The beneficiary has no title, either legal or equitable. He has simply a right to enforce the execution of the trust. (Civ. Code, sec. 863.) Where the evidence which tends to prove fraud or mistake, if standing alone, uncontradicted, is sufficiently clear and convincing, the judgment cannot be reversed on the ground that such evidence is contradicted by other evidence, because the right to pass upon the credibility of witnesses is not vested in the appellate court. The only question to be decided in respect to the sufficiency of the evidence is, whether that which tends to prove the alleged fraud or mistake, if standing alone, without contradiction, would make out a *prima facie* case. (*Henkle* v. *Royal Exch. Asso. Co.*, 1 Ves. Sr. 318; *Lyman* v. *U. Ins. Co.*, 17 Johns. 373; *Montville* v. *Haughton*, 7 Conn. 543; *Stephens* v. *Murton*, 6 Or. 193; *Briegel* v. *Moeller*, 82 Ill. 257; *Everts* v. *Strode*, 11 Ohio, 480; 38 Am. Dec. 744; *Harrison* v. *Jameson*, 3 J. J. Marsh. 232; *Huss* v. *Morris*, 63 Pa. St. 367; *Rigsbee* v. *Ives*, 21 Ind. 227.)

*Rhodes Borden*, for Intervenor and Respondent.

It was competent for the parties to agree that Waterman's interest should be held by the trustee as security for his debt to Stanford. (*Millard* v. *Hathaway*, 27 Cal. 120; *Broder* v. *Conklin*, 77 Cal. 330; *Thomas* v. *Jameson*, 77 Cal. 91; *Hellman* v. *Messmer*, 75 Cal. 166.) Since Waterman's debt to Stanford was not paid, neither he nor his creditor can ask the aid of a court of equity without first doing equity by tendering to Stanford the amount due him. (*Booth* v. *Hoskins*, 75 Cal. 271.) The

declaration of trust could be reformed in the absence of D. O. Mills, E. H. Dyer, E. Dyer, and J. B. Haggin, because they have no interest in the reformation asked. (*Settembre* v. *Putnam*, 30 Cal. 490–498; Pomeroy's Remedies, secs. 378, 379; Story's Eq. Pl., secs. 72, 76 a, 76 b, 229, 231, 519; Daniell's Chancery Practice, 219; *Catawissa R. R. Co.* v. *Titus*, 49 Pa. St. 277; *Newman* v. *Home Ins. Co.*, 20 Minn. 422; *Thomas* v. *Kennedy*, 24 Iowa, 404.) The instrument in question is not a joint contract; it is rather a collection of several contracts, in so far as it is a contract at all. On its face it shows that each signer had a distinct and separate interest. (*Moss* v. *Wilson*, 40 Cal. 159; Wharton on Contracts, secs. 815–818, and cases cited; Story's Eq. Pl., secs. 127–129, 129 a, 212; *Catawissa R. R. Co.* v. *Titus*, 49 Pa. 280; *Campbell* v. *Watson*, 8 Ohio, 498; *Hall* v. *Leigh*, 8 Cranch, 50; *Oweston* v. *Oyle*, 13 East, 538; Daniell's Chancery Practice, 219.) Messrs. Mills, Haggin, and Dyer were not necessary parties, for the further reason that their trustee, Smith, was a party to the suit, and he could defend for all or any of the beneficiaries, if their interests were to be affected injuriously. (Pomeroy on Remedies, sec. 357; Daniell's Chancery Practice, 5th Am. ed., 222–227; *Campbell* v. *Watson*, 8 Ohio, 498.) Reformation gives no new right. It merely sets forth what in equity has always been the right of the party asking it. (*Hayford* v. *Kocher*, 65 Cal. 389.) Attaching creditors cannot resist reformation when the remedy would have been proper against their debtor. They are not subsequent purchasers or encumbrancers for value. If we had a right to a reformation before the levy of plaintiff's attachment, we have the same right now. (Kerr on Fraud and Mistake, 419, note; *Lowe* v. *Allen*, 68 Ga. 225; *Wall* v. *Arrington*, 13 Ga. 88; *Thomas* v. *Kennedy*, 24 Iowa, 496; 95 Am. Dec. 740; *White* v. *Wilson*, 6 Blackf. 488; 39 Am. Dec. 437; *Bush* v. *Bush*, 33 Kan. 556; *Barr* v. *Hatch*, 3 Ohio, 527; *Simmons* v. *North*, 3 Smedes & M. 67; *Goveneur* v. *Titus*, 1 Edw. Ch. 477; *Allen*

v. *McGaughey*, 31 Ark. 252; *Blackburn* v. *Randolph*, 33 Ark. 119; *Strang* v. *Beach*, 11 Ohio St. 283; 78 Am. Dec. 300.) Some of the cases, notably *Rider* v. *Powell*, 28 N. Y. 310, have gone so far as to hold that equity would grant reformation even where the mistake was a unilateral one; and there is a long line of cases in English chancery where it was held the mistake was unilateral, and yet the court granted a provisional sort of reformation, —that is, decreed that the instrument be reformed, but giving the defendant the option of rescinding. (*Harris* v. *Pepperell*, Eng. L. R. 5 Eq. Cas. 1; *Mortimer* v. *Shortall*, 2 Dru. & War. 363; *Garrard* v. *Frankel*, 30 Beav. 445; *Harryman* v. *Collins*, 18 Beav. 11; *Murray* v. *Parker*, 19 Beav. 305; Story's Eq. Jur., sec. 164 c.)

Fox, J.—On the eleventh day of February, 1885, the plaintiff commenced a suit against the defendant Waterman for the recovery of the sum of $21,404.16, with interest, due from said defendant upon a promissory note, which suit was brought in the superior court in and for the city and county of San Francisco. At the time of commencing the action he caused a writ of attachment to be issued, directed to the sheriff of the county of Alameda, and under it, caused the sheriff to attach all the right, title, and interest of the said Waterman in and to certain lands situate in said county of Alameda, standing of record in the name of the defendant S. P. Smith. In that suit such proceedings were had as that in due course the plaintiff recovered judgment, and caused execution to be issued directed to the sheriff of the city and county of San Francisco, who in due time returned the same *nulla bona*. Thereupon the plaintiff instituted this action, in the nature of a creditors' bill, in the superior court in and for the county of Alameda, against the defendants Waterman and Smith, alleging, among other necessary and proper things, that the defendant Smith held the legal title in and to the lands so

attached as aforesaid, to the extent of one undivided eighth thereof, in secret trust for the said Waterman; that Smith paid no consideration therefor, or for any interest in the said land; that the purchase price of said land had been wholly paid by other parties, one eighth thereof having been paid by the said Waterman, and that as to said eighth interest, Waterman was the equitable owner thereof, but he had caused the legal title thereof to be vested in said Smith, to prevent the same from being subjected to the payment of the indebtedness of said Waterman, and thereby to defraud the plaintiff and the estate represented by him; that Waterman had no personal property out of which to make the judgment in favor of plaintiff; and that there was no real estate standing in the name of said Waterman in this state; and praying a decree adjudging the said Waterman to be the owner of said one eighth interest in said land, and subjecting the same to the lien of plaintiff's judgment.

The defendants answered jointly, setting up that, long prior to the conveyances by which Smith became vested with the title to said lands, the defendant Waterman was the owner of a contract for the purchase of an interest in said lands, amounting to an undivided eighth thereof, and had become entitled to a conveyance of said undivided interest; that while so entitled, and on the fourteenth day of March, 1877, at his request, Stanford had become accommodation indorser on promissory notes of Waterman to the amount of $16,500, and that, to secure Stanford against loss by reason of such indorsements, Waterman had, in writing, assigned to Stanford his interest in said contract, and all his rights thereunder; that Waterman made default in paying the notes so indorsed, and Stanford had been compelled to pay the same; that subsequently, and on September 6, 1878, Waterman made a new note to Stanford for the amount which he had been compelled to advance as

aforesaid, with interest, then amounting to the sum of
$19,315, payable March 15, 1879, with interest at the
rate of ten per cent per annum, payable monthly in
advance, and if not so paid to be added to the principal,
and bear interest at the same rate, which said note was
in like manner secured by said assignment; that no part
of said note or the interest thereon had been paid ex-
cept $2,536 paid August 11, 1882; that within two years
next preceding the filing of said answer, and of the
judgment referred to in the complaint, Waterman had,
in writing, promised to pay said note and interest, and
declared said assignment to be a subsisting lien upon any
interest he had in the lands described in the complaint
as security for such payment; that the said Waterman
and other parties beneficially interested therein had
caused said property to be conveyed to said Smith in
good faith, and not for the purpose of defrauding the
plaintiff or any other creditor of said Waterman, or of
concealing said property, or placing the same beyond
the reach of plaintiff, or of hindering or delaying the
plaintiff, or of preventing the said Waterman's alleged
interest from being subjected to the payment of said in-
debtedness; that the same was made to said Smith for
the purpose of more conveniently making sales of said
property, and in trust to divide the proceeds of such
sales, after paying the expenses thereof, among the
parties thereunto beneficially interested, and that the
interest of said Waterman therein is now held in trust
by said Smith for the purpose of paying the indebted-
ness of Waterman to Stanford, so far as the same can
be applied to such payment.

In this suit Stanford, by leave of the court, inter-
vened, and set up substantially, among other things,
that, at the time of and for a long time prior to the con-
veyance of said property to defendant Smith, certain
persons named in the declaration of trust, a copy of
which was annexed to said intervention, were and had

been the equitable owners of the lands and premises described in the complaint, in the proportions in said declaration named; that they caused and procured the legal title to be conveyed to and vested in said Smith for the purposes expressly set forth in the said declaration of trust, or intended to be so stated; that at the time of the execution of such conveyance and declaration of trust, the said Stanford was absent from the state, and in Europe; that before he departed for Europe, it was understood and agreed between himself and the others in interest that the title should be so vested in some one person, for convenience of management and sale and distribution of the proceeds, and that a declaration should be made and executed showing the nature and character of the trust, and the relative interests of the respective parties, and that it was agreed between himself and Waterman that when such declaration was made Waterman should have it show that the proceeds of the interest of Waterman were to be paid to Stanford until the debt from Waterman to Stanford was satisfied; that when the declaration of trust came to be executed it was executed on behalf of Stanford by his attorney in fact, who knew nothing of the arrangement between his principal and Waterman, and by a mutual mistake on the part of Stanford, by his representative, and of Waterman, the declaration failed to state the truth in this regard, and showed upon its face that one eighth of the proceeds of the sale of said property, less the costs and expenses of the trust, was to be paid to said Waterman; and prayed that the declaration be reformed accordingly. This is a substantial, though not a literal, statement of the allegations of the complaint in intervention, as it was finally amended. The declaration of trust attached recited that the title had been caused to be conveyed to the defendant Smith by the persons hereinafter named as beneficiaries, to be by him managed and sold off for the best prices to be obtained, in such subdivisions as

might be determined upon, and the rents and profits and proceeds of the sales thereof, less the costs and expenses of the trust, be divided between the said beneficiaries in the following proportions, to wit: To Leland Stanford, one fourth; to D. O. Mills, one fourth; to James B. Haggin, one fourth; to Fred H. Waterman, one eighth; to Ephraim Dyer, one sixteenth; and to Eben H. Dyer, one sixteenth. And the same was executed by the said beneficiaries and the said Smith. The plaintiff demurred to the complaint of intervention, and this being overruled, he answered, denying the material allegations thereof, and pleading the statute of limitations against the claim of the intervenor. A trial being had, the court found the facts substantially as stated in the complaint of intervention, and by its decree reformed the said declaration of trust, so as to make the proceeds aforesaid payable by said Smith to the beneficiaries as follows: To Leland Stanford, one fourth; to D. O. Mills, one fourth; to James B. Haggin, one fourth; to Leland Stanford, one eighth thereof, until the debt of said Waterman aforesaid shall be fully paid and discharged, and thereafter to said F. H. Waterman; to Ephraim Dyer, one sixteenth; and to said Eben H. Dyer, one sixteenth. And decreed, among other things, that the proceeds of the sales of the said one-eighth interest should be paid by said Smith to said Stanford until said indebtedness should be fully paid, thereafter to the plaintiff in this suit until the debt of Waterman to the plaintiff is satisfied, the residue, if any, to said Waterman. From this judgment the plaintiff appeals, and the case comes up on the judgment roll and a bill of exceptions. The first point made by the appellant is, that the court erred in overruling the demurrer to the complaint in intervention.

1. For that the declaration of trust could not be reformed in the absence of the other beneficiaries, Mills, Haggin, and the two Dyers. Mills, Haggin, and the

Dyers were not necessary parties to an action to reform the declaration in the particular in which reformation was sought. They were not parties to the arrangement between Stanford and Waterman; did not necessarily or in fact have any knowledge of that arrangement, and the proposed reformation would not in any manner affect any of their interests. (Story's Eq. Pl., secs. 72, 151; *Settembre* v. *Putnam*, 30 Cal. 490.) As to each of these separate interests, the contract or declaration was several, and not joint; and to reform it as to one of these interests, it was only necessary to make those persons parties who were interested in that interest. (*Moss* v. *Wilson*, 40 Cal. 159.)

2. For that the complaint failed to show that there was any mistake, or mutual mistake, in the instrument; or that there was any intention of Stanford and Waterman, or either of them, at the time of the execution of the instrument, to create a trust in favor of Stanford; or that if there was any such intention it was known to Smith; or that as to him any mistake was made in its terms. We think the complaint in intervention sufficiently shows upon its face a mutual intention on the part of Stanford and Waterman to establish that trust as to that one-eighth interest, and that, by the oversight of Waterman, who had undertaken to see it done in the absence of Stanford, the instrument failed to correctly state the true intent of the parties in that regard. As to the trustee Smith, it was a matter of entire indifference to him, and it made no difference whether he shared in the intention or knew of the mistake, or not. He was the holder of a mere naked trust, not coupled with any interest, and will be entirely unaffected by the reformation asked for. An objection to the reformation on the ground that he had not shared in the alleged mistake, if made, is one purely personal to himself. He is a party to the suit, and has not made the objection. It does not

lie in the mouth of Waterman, who did share in the mistake, or of his attaching creditor, to make it.

The next point made by appellant is, that the facts found by the court were not such as entitle the intervenor to a revision of the declaration of trust. Upon this point the counsel argue that, to warrant a revision or reformation of the contract, the mistake must be not only mutual, but one which is common to all the parties who executed the instrument. This contention might be correct if the revision was sought as to a matter which affected all the parties; but in a case like this, where the interests were several and not joint, and the mistake was as to one interest, not as to all, and affected only two of the parties, it is not perceived upon what principle the instrument may not be reformed in that particular, if there was a mistake common to the parties interested in that particular interest, whether the others had knowledge of it or not. It was the duty of the court to inquire what the instrument was intended to mean, and what were intended to be its legal consequences. (Civ. Code, sec. 3401.) If it fails to speak the truth only as to one particular, why may it not be revised and corrected as to that particular without the presence of persons who will not be in any manner affected by the revision? The province of equity is to make the instrument conform to the agreement of the parties. This instrument contains the several and separate agreements of many parties. It is proposed to revise it only as to one of those agreements. This may be done without bringing in any but the parties to that particular agreement. It is also contended in this connection that the mistake must be as to the intention of the parties at the very moment of the execution of the instrument, and that the court does not find that such was the fact in this instance. The court finds, in substance, that before Stanford left for Europe, his mind and Waterman's met as to what was to be put into this instrument when made in regard to

this one-eighth interest, and it was left to Waterman to
see it carried out. The failure to carry it out was through
oversight, not through design, on the part of Waterman.
It being shown that the minds of the parties had met
and agreed upon what was to be done when the time
came to act, in the absence of proof to the contrary, the
law presumes that they remained in the same condition of
agreement until the act was done. (Code Civ. Proc.,
sec. 1963, subd. 32.) It is a mistake to say that the
minds which were required to meet at the time of the
signing of the instrument, and whose condition at that
time controls the question of the right to revise, were
not those of Stanford and Waterman, but were those of
Lathrop, the attorney in fact of Stanford, and of Water-
man. Lathrop was not thinking or bargaining for
Stanford in that matter, but was acting as the mere
hand of Stanford. He was charged with no discretion
as to terms, and with no other power than to affix Stan-
ford's name to the instrument which should be prepared
and presented by Stanford's associates. Therefore the
intention to be considered was and is the intention that
was in the minds of Stanford and Waterman, not that
which was in the minds of Lathrop and Waterman. As
to Smith, the court finds that his intention was to de-
clare such a trust as the parties beneficially interested
should agree upon, and this he supposed he had done.
As we read it, the court does substantially find all the
facts showing that *quoad* this one-eighth interest there
was a mistake, mutual between Stanford and Waterman;
that it was a mistake in and as to the instrument itself,
and such a one as may by the court "be revised, on the
application of a party aggrieved, . . . . so far as it can be
done without prejudice to the rights acquired by third
persons, in good faith and for value," as provided in sec-
tion 3399 of the Civil Code.

Appellant also makes the point that the evidence was
insufficient to justify the decision of the court below,

and upon this point insists that a written instrument
will not be reformed by a court of equity on the ground
of mistake, unless the proof "be so clear and convincing
as to leave no room for doubt." (Citing *Cox* v. *Woods*,
67 Cal. 317; *Leonis* v. *Lazzarovich*, 55 Cal. 54; and *Lestrade*
v. *Barth*, 19 Cal. 674.) In each of the cases cited, the
court does use substantially the language above quoted,
but in none of them is it used in such connection, or
under such circumstances, as to justify this court in dis-
regarding the finding of the court below, where there is
any evidence to support it. In each of the cases it is
apparent that the mind to which the evidence is to be
"clear and convincing" is the mind of the court below,
— the court which heard the evidence, and is especially
charged with the duty of passing upon the credibility of
the witnesses, — a duty which is not imposed upon, and
a right which is not vested in, this court. In *Lestrade* v.
*Barth*, 19 Cal. 674, the court says: "The form in which
relief will be given, when a mistake in a material par-
ticular is established in a written agreement, must neces-
sarily depend upon the circumstances in the particular
case. Courts of equity have a wide discretion in such
matters, their object being to give the parties the same
beneficial result which would have flowed from the agree-
ment had the mistake never existed." And taking the
whole case together, and the conclusion reached, it is an
authority strongly supporting the decision of the court
below in this case. In *Leonis* v. *Lazzarovich*, 55 Cal. 54,
there was a sharp and direct conflict in the evidence as to
whether there was a mistake in the deed or not, the wit-
nesses being about equally divided on the subject. The
court found in favor of the alleged mistake, and reformed
the deed. This court reversed the judgment, but refused
to rest its opinion on the ground that the decision of
the court below was not sustained by the evidence. In
*Cox* v. *Woods*, 67 Cal. 313, the only testimony offered in
support of the allegation of mistake was that of a single

witness, and his testimony was contradictory in itself. On it the court below was not satisfied that a mistake had been made, and this court refused to reverse its decision. In *Jarnatt* v. *Cooper*, 59 Cal. 706, this court ·again uses the words " clear and convincing," but in that connection shows very clearly what is meant by their use. It says: "It is doubtless a well-settled rule that the party alleging fraud or mistake is bound to prove his allegation by clear and convincing evidence; that is, that the evidence which tends to prove the alleged fraud or mistake, if standing alone, uncontradicted, would establish a clear *prima facie* case of fraud or mistake. If it does not, this court may reverse the judgment on the ground of insufficiency of the evidence to justify the decision. But where the evidence which tends to prove fraud or mistake, if standing alone, uncontradicted, is sufficiently clear and convincing, we cannot reverse the judgment on the ground that such evidence is contradicted by other evidence, because the right to pass upon the credibility of witnesses is not vested in this court. The only question which we have to decide in respect to the sufficiency of the evidence is, whether that which tends to prove the alleged fraud or mistake, if standing alone, without contradiction, would make out a *prima facie* case." Applying that principle to the present case, there is no conflict whatever in the evidence tending to prove the alleged mistake. It is all one way. The credibility and appearance of the witnesses would necessarily have much to do with determining the weight to be given to this evidence, and consequently its sufficiency. The court below has found it sufficient to establish a *prima facie* case, and we cannot say that it erred in such finding.

It is claimed by appellant that the decision of the court below is against law, in several particulars, but we do not deem it necessary to discuss them all in detail. One is, that the conclusion of law that Stanford's claim

against Waterman was not barred by the statute of limitations, and that the plaintiff could not avail himself of the statute as far as the attached property was concerned, was error. Prior to the conveyance of the property to Smith, the defendant Waterman was the equitable owner of this one-eighth interest. He had purchased and paid for it, but had not received a conveyance thereof. He had assigned his interest in the contract of purchase to Stanford as security for the payment of his said indebtedness. For the purposes of this case, it may be conceded that this assignment operated as a mortgage of his equitable interest as security for that indebtedness. The note therefor had become barred by the statute of limitations, and the court correctly held that the mortgage lien created by that assignment was extinguished by lapse of time before the declaration of trust was executed. But the court also correctly held that the plea of the statute of limitations was a personal privilege, and that the debt of Waterman to Stanford was not extinguished by lapse of time, unless he, Waterman, availed himself of the plea, which he did not do. (*Lord* v. *Morris*, 18 Cal. 490, afterwards many times affirmed.) Instead of that, it appears from the pleadings, the findings, and the evidence, that after the time had arrived when he could have availed himself of that plea, he acknowledged the continued existence of the debt, and united with the other equitable owners in causing the property to be conveyed to Smith, and in the creation of the express trust evidenced by the declaration here under consideration. In and by that trust the court finds that it was intended to provide that the proceeds of the rents and profits, and of the sale, of that one-eighth interest, should be paid to Stanford, until his claim against Waterman was paid, and that the failure to so provide was through mistake, and not design; and it orders that the declaration be revised and corrected to read accordingly.

This finding and judgment proceeds upon the theory

that it ought to have been so written in the first instance, and if the judgment is sustained, it will and must so read and operate as and from its original date. Equity presumes that that which ought to have been done was done, and gives it force and effect as if done. The right of Waterman to renew his personal obligation to Stanford, in any form that they might agree upon, cannot and will not be disputed. And it does not appear that, at the date of the creation of this trust, there was any legal or even moral objection to his encumbering, or (as he did do) actually and forever disposing of and parting with his interest in this real property. At that time the plaintiff had no enforceable claim against the defendant Waterman. It was not until several months after the creation of this trust, and after Waterman had parted with all title, legal or equitable, to and all interest in this land, that the note was given upon which plaintiff's action was brought. It was then given, as appears from the face of the complaint, in renewal of an obligation originally given to plaintiff's testator, and which had been barred by the statute of limitations for more than ten years. At the time it was given, Waterman had no interest, and has never since acquired any, legal or equitable, in the property which plaintiff subsequently attached. It is true that plaintiff has proceeded upon the theory that Waterman had, at the time of the attachment, and still has, an equitable interest in that property, and that the claim of Stanford is in the nature of a mortgage upon that equitable interest, and is extinguished by the lapse of time. But this is a mistaken theory which has run all through the discussion of this case, and led to much confusion. The trust created in Smith is an express trust, under subdivision 1, section 857, of the Civil Code. It vests in Smith the whole title, legal and equitable. (Civ. Code, sec. 863.) By the very terms of the trust, whether we read it as originally written or as revised, Waterman had no interest

in the property, and could never acquire any interest, unless he purchased it, as any stranger might do.

The only right that any beneficiary under the trust had or has was to share in the proceeds of the rents and profits when realized, and of the sale of the land when sold, and the only remedy that of proceedings to enforce the execution of the trust. On either theory, however, the court was correct in holding that the plaintiff could not avail himself of the plea of the statute of limitations, since Waterman declined to make the plea. Even if Waterman had an interest in the attached property, the lien of the attachment would be subject to all equities. (*O'Rourke* v. *O'Connor*, 39 Cal. 442; *De Celis* v. *Porter*, 59 Cal. 464.) Even an unrecorded deed would prevail against the lien of the attachment. (*Plant* v. *Smythe*, 45 Cal. 161; *Le Clert* v. *Oullahan*, 52 Cal. 252; *Hoag* v. *Howard*, 55 Cal. 564.) It is held that a subsequent purchaser or mortgagee, in good faith and for value, may avail himself of the statute of limitations for the protection of his interest, even if his grantor or mortgagor does not make the plea. (*Lord* v. *Morris*, 18 Cal. 482; *McCarthy* v. *White*, 21 Cal. 496; 82 Am. Dec. 754; *Grattan* v. *Wiggins*, 23 Cal. 16; *Coster* v. *Brown*, 23 Cal. 142; *Lent* v. *Shear*, 26 Cal. 362; *Wood* v. *Goodfellow*, 43 Cal. 185.) But this is upon the principle that, *quoad* the property, the common debtor has for valuable consideration placed his grantee or mortgagee in his own shoes, and authorized him, for the purpose of protecting the property, to make any plea which he himself could have made. Not so with a mere creditor, who has acquired no contract lien, and parted with no value. He gets nothing but what is given him by the strict letter of the law, and it does not lie in his mouth to defeat the equities of third persons by means of that which is at best a mere personal privilege of his debtor. But, in addition to this, upon the true theory of this case, the plaintiff took nothing, and acquired no right, by the

levy of his attachment. According to the allegations of his complaint, the writ was levied, not by garnishment, but by direct levy, as upon real estate, upon all the interest of Waterman in the land. As we have already seen, Waterman had no interest in the land, legal, equitable, present, or prospective. "An attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment. If, therefore, the property be in such a situation that the defendant has lost his power over it, or has not yet acquired such interest in or power over it as to permit him to dispose of it adversely to others, it cannot be attached for his debt." (*Howell* v. *Foster*, 65 Cal. 173.)

It is also claimed that the claim of the intervenor to have the declaration revised or reformed is barred by subdivision 4, section 338 of the Code of Civil Procedure. According to the pleadings, the findings, and the proof, this point is not well taken, for the mistake was not discovered until the attachment was levied, and that was less than three years before the commencement of this suit, and the filing of the complaint of intervention.

There was no error in allowing the intervenor to amend his complaint at the trial, to conform to the proofs. This was a matter entirely within the discretion of the court, and fully authorized by section 470 of the Code of Civil Procedure.

Judgment affirmed.

BEATTY, C. J., and PATERSON, J., concurred.