*General Development Co.,* 136 Cal.App. 411 [28 P.2d 939]; 14 Cal.Jur. p. 1072, § 115.)

The interlocutory decree of divorce, including the award of custody of the minor child and for maintenance contained therein, and the order denying relief under sections 473 and 473a of the Code of Civil Procedure, are affirmed.

Adams, P. J., and Peek, J., concurred.

[Civ. No. 3371. Fourth Dist. Oct. 23, 1945.]

CITY OF SAN DIEGO (a Municipal Corporation), Appellant, v. CALIFORNIA WATER & TELEPHONE COMPANY (a Corporation) et al., Respondents.

J. F. DuPaul, City Attorney, J. H. McKinney, Deputy City Attorney, and Shelley J. Higgins, Special Attorney, for Appellant.

Charles C. Crouch, Phil D. Swing, Bacigalupi, Elkus & Salinger and Philip Storer Thacher for Respondents.

T. B. Cosgrove as Amicus Curiae in behalf of Respondents.

BARNARD, P. J.—The plaintiff has appealed from a judgment dismissing the action following the sustaining of a demurrer to its complaint, and its refusal to amend.

The action, filed on November 19, 1943, was one in equity for the purpose of setting aside and vacating, on the ground of extrinsic fraud, a judgment rendered on December 1, 1942, in the case of *Marvin L. Allen, et al., Plaintiffs,* v. *California Water & Telephone Company, a Corporation, et al., Defendants.* An appeal in that case is now pending in the Supreme Court, a hearing having been granted after a decision in this court. (68 A.C.A. 775 [157 P.2d 663].) That case will be referred to as the Allen case.

So far as material here, the allegations of the complaint in this action may be briefly summarized. It is alleged that the tributary sources of the Tia Juana River rise in the eastern part of San Diego County in this state and in the Republic of Mexico; that the branches which rise in the United States converge into Pine Creek and Cottonwood River; that these two streams converge and under the names "Cottonwood" and "Tia Juana River" flow across the international boundary line at a point known as the "Marron Dam Site," located about twenty-four miles from the Pacific Ocean, and thereafter merge with the branches arising in Mexico; that the main stream of the Tia Juana River then flows westerly through Mexico to a point on the boundary line about six miles eastward from the Pacific Ocean, where it crosses from Mexico into the United States; that it then flows westerly through territory of the United States for about six miles and empties into the Pacific Ocean; and that for these six miles the valley of this river, which is referred to as the Tia Juana River Basin, has a considerable underground flow of water and constitutes a reservoir for large quantities of underground water. For convenience, this six miles of river valley will be referred to as the "basin."

It is alleged that since 1912 the city has owned and operated a water system for the benefit of its inhabitants; that among the properties thus owned are Moreno Dam and Reservoir on Pine Creek and Barrett Dam and Reservoir on Cottonwood River in San Diego County, and the Marron

Dam Site, with the right to construct a dam on that site and to develop and impound waters there; also the right to construct other dams on Cottonwood River and Pine Creek for the purpose of developing and impounding waters, which said rights were secured from the owners of lands riparian to the Tia Juana River and located in the basin we have described; that all of the owners of the lands in said basin have heretofore released and waived their riparian rights in favor of the right of the city to construct dams at Marron Dam Site and on the Cottonwood River and Pine Creek, and to develop and impound waters thereby; and that since 1912 the city has been diligently engaged in carrying out a plan for the full development of the Cottonwood River and Pine Creek at and above Marron Dam Site, including activities through the State Department whereby the city has sought to obtain the right to construct a dam at the Marron Dam Site, partly within the United States and partly within Mexico.

It is then alleged that in 1936 the defendants other than the California Water & Telephone Company, which will be hereafter referred to as the water company, commenced the Allen case alleging that the water company was trespassing upon their rights as riparian landowners in the basin and asking that the water company be enjoined from pumping and diverting water from that basin; that on August 17, 1936, the water company filed an answer and on September 25, 1936, filed a cross-complaint naming the city as a cross-defendant; that the cross-complaint alleged the water company's right to divert water from the river and its tributaries, including this basin, and asked that the city be required to set up any rights it had which were adverse to or superior to the water company's rights; that the city filed an answer alleging that its only interest in the waters of the Tia Juana River and its tributaries was as a riparian owner of 105 acres of land located in the basin; that the water company's answer and cross-complaint both alleged that the plaintiffs and the city of San Diego had released and waived their riparian rights as owners of land in the basin; and that on December 4, 1940, the city filed an amended answer to the water company's cross-complaint denying, among other things, that the city had released any of its riparian rights affecting its 105 acres of land in this basin, but that the city failed to plead to the allegation that the plaintiffs in the Allen case had released and waived their riparian rights in

connection with this basin, and failed to allege that the city was then the owner of all such released and waived rights.

It is then alleged that from 1936 to July 28, 1941, one Dayton L. Ault was the plaintiff's city attorney; that since October 1, 1939, Phil D. Swing has been employed by the city as a special water attorney for the purpose of aiding and assisting the city attorney in all matters involving litigation over the city's water rights; that during all the year 1939 and thereafter Mr. Ault was suffering from an incurable disease which incapacitated him from properly performing his duties and compelled him to rely on other attorneys employed by the city, including Mr. Swing; that Ault consulted with and relied upon Swing with reference to the defense to be interposed in the Allen case; that Swing advised Ault that the city's only interest in that litigation was by virtue of its ownership of 105 acres of land in the Tia Juana River Basin, that the city's interest was the same as that of other landowners in that basin, that it was not necessary in order to protect the city's rights to have a special water attorney in attendance at the trial of the action, that he, Swing, would as attorney for certain of the plaintiffs in that action be protecting not only the rights of the plaintiffs but also the rights of the city, and that it was to the interest of the city to have the water company enjoined from diverting water from the Tia Juana River and its watershed; that during the trial of the Allen case Ault consulted with Swing and depended upon his advice; that Swing had personal knowledge of the water rights and properties of the city and its efforts to secure the right to build the Marron Dam; and that Swing knew that included in the city's water rights were the riparian releases waived and conveyed by the landowners in the basin in favor of the city.

It is then alleged, on information and belief, that Swing failed to advise Mr. Ault of the city's water rights and these riparian releases and of its efforts to obtain the right to construct the Marron Dam; that he failed to advise Ault or any of his deputies or any other city officer that these rights were affected in the Allen action and should have been pleaded therein in answer to the cross-complaint of the water company; and that neither Ault nor any of his deputies nor any other city officer had any reason to know of the issues involved in the Allen case, nor that said action involved the city's rights on the upper waters of the Cottonwood River and Pine Creek.

It is then alleged that the trial of the Allen case began on November 25, 1941; that among the issues presented by the pleadings therein was whether or not the landowners in this basin had ever released or waived the riparian rights connected with their respective lands in that basin; that during the trial there was no evidence introduced relating to the release of those rights; that the only evidence introduced by the city related to its rights arising from its ownership of 105 acres in the basin, and no evidence was presented relating to its rights to build dams and reservoirs on the Cottonwood River and Pine Creek above Marron Dam Site; that during the trial the city was represented by an inexperienced deputy city attorney who prepared the city's amended answer to the water company's cross-complaint on the advice of Swing; that the deputy took no part in the trial except as he was directed or advised by Swing; and that this deputy had no knowledge of the city's rights in and to the waters of the Tia Juana River and its tributaries save and except its right as an owner of land in the basin.

It is then alleged that at the beginning of the trial Swing appeared as attorney for the plaintiffs in the Allen case; that during the trial of that case and on March 17, 1941, he stated in open court that he had been criticized for representing adverse interests and requested the court to advise him whether or not he was so doing and had better withdraw from the case; that at that time he stated that he was not representing the city in that litigation, that the city had no interest other than as set forth in its answer to the cross-complaint of the water company, and that it had no interest except as a riparian owner of land in the basin and therefore its interest was identical with that of the plaintiffs; that prior thereto Swing had been requested by Ault to protect the city's interest in this litigation and to advise and work with the deputy city attorney in this regard; that Swing then knew that one of the issues in the Allen case was as to whether the riparian owners of land in this basin had released and waived their riparian rights; that he knew these riparian rights had been waived and that the city of San Diego was the owner of them; that he should have known that a judgment on this issue in favor of the plaintiffs would be adverse to the city; that notwithstanding this knowledge he did not disclose the requisite facts to the court; and that the attorneys for the water company heard Mr. Swing's statement and failed to advise the court of the actual situation.

It is then alleged that the court made findings in the Allen case and on December 1, 1942, entered a judgment which failed to indicate that the city had the right to develop and impound waters on Pine Creek and Cottonwood River; and that this failure occurred because of excusable neglect and because of the fraud thus practiced on the city which prevented it from presenting, and having passed upon, its rights to further impound and store water on Cottonwood River and Pine Creek.

It is further alleged that Dayton L. Ault died and another city attorney was appointed on August 19, 1941, who served until January 4, 1943; that another city attorney was then appointed and served to May 6, 1943, at which time the present city attorney took office; that neither of the two intervening city attorneys had any knowledge of the issues involved in the Allen case; and that it was not until the present city attorney took office that the real facts were discovered.

The appellant city contends that the judgment in the Allen case is broad enough to require that it be considered res judicata upon the question of its right to further impound and use the waters of Cottonwood River and of Pine Creek above the Marron Dam Site. While it is conceded that the judgment does not expressly decide that the city has no right to impound such waters, it is argued that the issue as to its right to do so was necessarily involved in the issues actually litigated in the Allen case; that such issue could and should have been there litigated; that by the action of Mr. Swing the city was deprived of its day in court upon the issue of its right to take and use such waters; that "because of such conduct of said special water counsel, the court itself was prevented from trying any such an issue"; and that such conduct "is extrinsic fraud or mistake, sufficient in character" to justify an equity court in setting aside the judgment.

The main question here presented is as to whether the judgment entered in the Allen case is res judicata, as among the parties thereto, with respect to the city's rights to further impound and use waters of the Cottonwood River and Pine Creek above Marron Dam Site. This requires an examination of the scope of the pleadings, findings and judgment in the Allen case, all of which were by reference and by stipulation considered by the trial court.

The complaint in the Allen case alleged that the numerous plaintiffs were the owners of lands overlying the under-

ground waters of this basin; that the defendant water company owned one parcel similarly situated from which, by means of wells, pumps and a pipe line it had been exporting underground waters of the basin to distant points; that it proposed to increase its operations; and that the entire underground water supply of the basin was necessary for the present and future beneficial uses of the plaintiffs upon their overlying lands. The city of San Diego was not made a party, and the prayer was that the water company be enjoined from exporting any water from the basin, that the court ascertain the amounts of water reasonably required for the present and future use of each parcel owned by the plaintiffs, and that it enter a declaratory decree adjudging that such quantities of water so required by the plaintiffs are prior and paramount to any rights or claims of the water company. The water company filed an answer on August 17, 1936, alleging that there was a surplus of water in this basin after all the plaintiffs' requirements are met and after all rights acquired by appropriation or prescription are satisfied. It also alleged that the water company owned 200 acres of land overlying this basin, with other allegations as to the amounts of water in this basin, the annual net safe yield of the basin, and the amount reasonably required for all beneficial purposes on lands overlying the basin and on lands using water therefrom through prescriptive or appropriative claims. It is also alleged that the water level in the basin has not been, and will not be, lowered by its operations.

On September 25, 1936, the water company also filed a cross-complaint naming some 500 cross-defendants, including the city of San Diego. Only a few of these were served, and a dismissal was later entered as to the others. This cross-complaint described the course of the Tia Juana River generally, and particularly described the situation in this basin. It alleges the amount of water in this basin, the annual safe yield of the basin, the amount necessary for the reasonable and beneficial purposes of all lands having a right to take water from the basin, and the existence of a surplus which the water company may safely be permitted to take. It refers to the *lis pendens* which the water company also filed, in which it was stated that the relief sought by the cross-complaint was an adjudication of the rights of the cross-defendants in the waters of the Tia Juana River and this basin *appurtenant to* the particular lands in San Diego County de-

scribed in connection with the name of each cross-defendant. In connection with the cross-defendant city of San Diego, the description given is that of the 105 acres of land within the basin area which is owned by the city. It is then alleged that all of the cross-defendants claim some right or interest in the waters of the Tia Juana River and/or its tributaries and/or the water underlying this valley or portions thereof, and that all of the cross-defendants or their predecessors ''have released the riparian rights incident to the cross-defendants' lands, such releases being of record in the office of the county recorder of San Diego County.'' The prayer is that the cross-defendants be required to set forth their claim of right to water of the Tia Juana River and to water underlying this basin; that the court declare the right of the cross-complainant and each cross-defendant ''in the water of the Tia Juana River and the water underlying the Tia Juana River valley''; and that the court make reasonable regulation for the use of this water by the respective parties.

Several of the plaintiffs and cross-defendants filed answers to the cross-complaint denying, in general, the existence of a surplus of water in this basin, alleging their own interests in the water underlying the basin, and denying that they had released the riparian rights incident to their lands. On July 28, 1937, the city of San Diego filed an answer to the cross-complaint admitting that it claimed rights in the waters of the river and its tributaries and the waters underlying this basin, and alleging that 105 acres of land owned by it in the basin are a part of the lands described in the cross-complaint, and that these lands were purchased for the purpose of developing water thereon. The allegations of the cross-complaint, with reference to the amount of water in the basin, the annual safe yield therefrom, the amounts necessary for the beneficial use on other lands, and the existence of a surplus which could be safely exported by the water company are then denied. It is alleged that the subterranean and surface waters now in the basin are required for those lands lying within the basin and that any increased exportation of water by the water company would cause a lowering of the water table and an infiltration of salt water from the ocean which would render the remaining water unfit for use. It is then alleged that the completion of the Rodriquez Dam in Mexico will further reduce the annual storage of water in the basin and cause a serious shortage, and that all waters in the basin, so far as they affect the lands of the city, are necessary for

its use. The city also filed on July 28, 1937, a cross-complaint against the water company alleging its ownership of the 105 acres of land in the basin as described in the water company's pleadings and in its notice of *lis pendens,* that the water company claimed an interest in the waters of the river and/or its tributaries and/or the waters underlying this basin "all within the boundaries of the lands of the city above described," and that this claim was without right. The prayer was for a judgment against the water company quieting the city's title as to such waters.

An amended and supplemental complaint was filed on December 21, 1939, alleging ownership of land in this basin and uses of water therefrom by the various plaintiffs, the ownership of wells in the basin and the taking of water therefrom by the water company, and the resulting injury to the plaintiffs if an increased exportation of water were to be permitted. The prayer was that the water company be restrained from withdrawing underground waters from the basin for use upon outside lands, and that the court ascertain the requirements of each parcel of the plaintiffs' lands and enter a declaratory decree fixing such present and future needs and declaring the same paramount to the rights of the water company.

On June 20, 1940, the water company filed an answer to the amended and supplemental complaint. This raised no issues as to the city of San Diego and its allegations related to conditions in this basin, the water available therein, the existence of a surplus of water and the necessity of the water company's being allowed to take water therefrom if the waters of the river and the basin are to be put to their maximum reasonable and beneficial use.

On December 4, 1940, the city filed an amended answer to the water company's cross-complaint and an amended cross-complaint, in which the allegations are confined to the conditions in this basin, the water available therein, the requirements and uses of those having a right to take water from the basin, the existence of a surplus, and the danger of a depletion and of injury through the infiltration of salt water from the ocean if the water company be allowed to export water therefrom.

The court filed an exhaustive written opinion. After summarizing the allegations of the complaint, the court pointed out that the water company's cross-complaint brought in as a cross-defendant the city of San Diego "as an owner of

land in the Tia Juana Valley," that it contained allegations with respect to the available water supply in this basin, and that it further alleged that riparian rights of the cross-defendants had been released. After stating that the water company was entitled to take for export from the surface and underground waters of this basin only the excess, if any, over the reasonable requirements of those having paramount rights, the court pointed out that not all the owners of lands overlying this basin or having riparian rights therein were before the court, that the rights of those not before the court must be considered in determining whether there was any excess which the water company might take from this basin, and that the problem of establishing the respective rights of all users and claimants of water from this basin is one problem which must be considered as a whole. The court then reviewed the evidence with respect to the amounts of water then in this basin and coming into it, the present and future needs of those entitled to take water from the basin as against the water company, the danger of infiltration of salt water from the ocean if the water level was lowered, the fluctuation in the water level, and similar matters. The court then considered the effect of the water company's operations on particular individuals, as distinguished from the general body of water consumers, and stated that the problem included not only the available water supply but the absorptive quality and capacity of this basin, its ability to yield up water impounded and the fluctuation to be expected in the water level under the rate of draft contemplated. The court then announced its conclusion that considering the basin as a whole, there is in most years an excess of water in the basin over the requirements of those having rights superior to the water company; that in most years, however, the amount intended to be withdrawn by the water company was more than could be extracted with due regard for local needs; that in dry periods any export of water would be hazardous to the needs of lands overlying the basin; and that any exportation of water by the water company from this basin, other than from the surface flow of the river which actually wasted in the ocean, is bound to be detrimental to some of the individual landowners. The opinion then states that no evidence whatever was introduced in support of the defense that the landowners had relinquished their riparian or overlying rights to water from the basin, that no reliance had been placed upon this in the argument, and that the court must therefore assume

"that whatever relinquishments the defendants' answer may have alluded to, do not run in its favor or furnish any subject for the court's consideration in this case."

It was found in the Allen case, that the lands of the plaintiffs and cross-defendants are riparian to the Tia Juana River or that the owners thereof have rights to the underground waters of this basin similar to those of a riparian. The reasonable requirements of the plaintiffs and many of the cross-defendants were found in connection with their respective lands. It was found that the city of San Diego owned the 105-acre parcel within the basin and its present and future requirement of water was found. It was found that in ordinary years there would be no surplus of underground waters which the water company could safely be allowed to take, and that after considering the rights of all who had rights paramount to those of the water company the only surplus water is that part of the surface flow of the river which would reach the ocean if not diverted by the water company. Similar findings were made in connection with the issues raised by the cross-complaint of the water company and, in conformance with the absence of evidence on the subject, it was found that the plaintiffs and cross-defendants had not released their riparian rights but that they were the owners of such rights which are paramount to any rights of the water company. The conclusions of law are to the effect that the plaintiffs and cross-defendants have rights paramount to the water company in and to the waters of this basin, that the water company has correlative rights with respect to the parcel of land it owns in this basin, and that the water company is not entitled to export any water from this basin, except when the water is not reasonably required by the plaintiffs and cross-defendants, and with the exception of such surface flow of the river as would otherwise waste into the ocean. The judgment follows the findings and conclusions of law. There is no finding respecting the rights of the city in any waters above the Marron Dam Site, and there is neither any reference to such rights in the findings or judgment nor any provision purporting to affect or determine such rights.

The appellant here contends that it had certain rights to impound water on the tributaries of the Tia Juana River at and above the Marron Dam Site, some 20 miles above the basin involved in the Allen case and before such waters should ever enter the Republic of Mexico; that these rights included

and were largely based upon releases of riparian rights in connection with this basin which the city had obtained from the various parties in the Allen case, and which were owned by the city; that the water company's cross-complaint in the Allen case raised an issue as to the existence of these releases and waivers; that the city failed to meet that issue by its pleading or evidence; that while this issue was not actually tried it could and should have been tried; and that it follows that the judgment in the Allen case is res judicata with respect to the city's rights on such an issue and constitutes an estoppel against the city, preventing it from hereafter asserting any such rights.

Not only was this issue not actually tried in the Allen case, but it was not necessarily there involved and was not sufficiently presented as an issue to bring the matter within the rule contended for by the appellant. The pleadings in the Allen case are clearly confined to the situation existing in the basin there in question, to the rights of the plaintiffs and cross-defendants growing out of and appurtenant to their ownership of particular lands overlying or adjacent to this basin, and to whether or not any surplus water exists in that basin which may be safely exported by the water company without injury to the rights of those landowners. The cross-complaint of the water company did not make the city of San Diego a defendant generally, or with respect to any rights it might claim on the upper reaches of the river, but the city was made a cross-defendant as the owner of a particular tract within the basin area. It was not alleged that any releases of water rights were in favor of the city, nor that the city was the owner of any such releases. The cross-complaint did not refer to any rights of the city in and to the waters of the Tia Juana River or any of its tributaries other than as a landowner in this basin, and the right of no party to the action to the use of any water of the Tia Juana River or any of its tributaries at any point other than within this basin and after the water has reached the same, is alleged or questioned. The entire controversy in the Allen case was as to whether there was a surplus of water in this basin which would be available to the water company for export after the requirements of those having rights paramount to the water company were satisfied. The issues were confined to, and the case was tried on the basis of, the existing water supply in that basin, and no issue was raised or sought to be raised as to the right of the parties to that action to have the coming of waters into

that basin permanently continued as against the rights of other owners or users farther up on the river and its branches, either in Mexico or in the United States. The probability of some leakage from the Rodriquez Dam in Mexico was incidentally considered, but no issue was in any way raised as to the rights of anyone on the upper branches of the river to there take and use water which would otherwise naturally flow into this basin.

Not only the pleadings but the opinion of the court and the findings and judgment in the Allen case confirm this view. The trial court pointed out that not all interested persons were parties to the action and his opinion and findings clearly show that he was considering the rights of all interested persons, as a class, as against the claims and demands of the water company; that any question of water on the upper reaches of the river or its branches were considered only incidentally for their probable effect on the amount of water to be expected to come into this basin; that the allegation in the water company's cross-complaint that riparian rights of the other parties had been released was regarded as intended to be an allegation that these rights had been released in favor of the water company; and that since this issue was not presented or pressed it was, in effect, found that there had been no such release insofar as the water company was concerned. This is the effect of the findings and it was not only not alleged in the water company's cross-complaint that there had been any release of riparian rights to and in favor of the city of San Diego, but no such issue was ever raised or even suggested by any of the pleadings in the Allen case.

While the present and future needs of landowners overlying this basin were considered, and to some extent individually fixed, to arrive at the total amount of expected consumption for the purpose of determining whether or not a surplus existed which would be available to the water company, the landowners, both those appearing and those not appearing, were treated as a class and as against the claims of the water company. No attempt was made to fix the rights of the members of this class as between themselves, or to determine whether any of them had any rights except as landowners within the basin area, or whether any of them had parted with their rights, or whether any of them had a right, as against any owners of rights on the upper river, to have the flow of water into the river continue unabated. Assuming

that the city may not take water above the Marron Dam Site in derogation of vested rights which may exist in this basin area, a different situation exists if the city has acquired any such rights, but nothing in the Allen case has affected, or is determinative of, such a situation.

If one of the individual cross-defendants owning land in this basin had happened to own another parcel of land on Pine Creek, or one of the other upper tributaries of the river, with resulting rights to take water from the river, it would be a travesty on justice to hold that under the issues presented in the Allen case he was required to plead and defend his rights in connection with the upper reaches of the river. The city of San Diego is in no different position, and it would require a twisted and strained construction of the pleadings and issues presented to hold that its rights on the upper river were presented as an issue in the Allen case. It fully appears that this was the understanding of all parties throughout the trial of the Allen case, and that it was concurred in by the judge who tried that case and of this court when the appeal was pending here. In its decision in the Allen case, which has now been set aside, this court said: "The construction of the Marron Dam, as far as we are advised, was only mentioned incidentally in this action. Certainly its construction and impounding of waters behind it was not an issue presented to or decided by the trial court." (*Allen* v. *California W. & T. Co.*, 68 A.C.A. 775, at 800 [157 P.2d 663].)

The appellant contends that although its rights on the upper branches of the Tia Juana River arising in the United States and above the Marron Dam Site were not directly presented or passed upon in the Allen case, those rights were necessarily involved and are governed by the judgment rendered because, in order to determine whether or not there was a surplus of water in this basin which was available to the water company, the court was compelled to and did determine the requirements of the various plaintiffs and cross-defendants with respect to water needed on their respective lands overlying this basin. It is argued that this necessarily fixed and settled the rights of these various landowners as against any other party to that action, including the city, and that the matter therefore falls squarely within the principles laid down in the case of *Tulare Irr. District* v. *Lindsay-Strathmore Irr. Dist.*, 3 Cal.2d 489 [45 P.2d 972, 1014]. In that case, the issues involved all or practically all of the

waters of an entire river and the rights of all claimants to those waters, riparian and appropriative, including claims of rights to take waters at various points along the entire river. The various parties were not only united in their attack on a subsequent appropriator but the proceeding was a decidedly adversary one among the plaintiffs and interveners. The existence and extent of rights throughout the entire extent of the river was directly in issue and hotly contested and as the court pointed out the action was, in effect, one to quiet the title of the various parties. In the Allen case, with which we are here concerned, the various plaintiffs and cross-defendants while united as against the water company in order to prevent it from exporting water from this relatively small basin, and to that extent interested in showing a maximum total necessity and combined usage on their part, were in no sense adversary as between themselves, and the court was called upon simply to determine whether or not there was surplus water in this basin which could be exported by the water company without interfering with other parties whose rights, taken together, were superior to those of the water company. The court determined that issue and fixed the right of the various plaintiffs and cross-defendants as against the water company, in connection with the use of water from that basin, but no issues were tendered, no facts found and no rights were adjudicated with reference to the rights of the plaintiffs and cross-defendants as among themselves outside of this basin, or on any part of the stream or its tributaries other than within this basin and after the waters of the river had reached the same.

Moreover, no issue with respect to the rights of landowners in the basin to a continuance of the existing flow of water into the basin could well have been presented in the Allen case, since the water of the river flowed for many miles through Mexican territory before it entered the basin. That issue seems not only to have not been presented but to have been carefully avoided. At no time was any question ever raised in the Allen case with respect to the right of any landowner in the basin to have any particular amount of water come into the basin, or to have the existing flow into the basin maintained.

Section 1911, Code of Civil Procedure, provides "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary

thereto.'' In *Concannon* v. *Smith*, 134 Cal. 14 [66 P. 40], it is pointed out that what is really meant by the expression that a judgment is conclusive of every matter which the parties might have litigated in the action is ''that a judgment is conclusive upon the issues tendered by the plaintiff's complaint. It may be that the plaintiff might have united other causes of action with that set out in his complaint, . . . but as long as these several matters are not tendered as issues in the action, they are not affected by it.'' In *Stark* v. *Coker*, 20 Cal.2d 839 [129 P.2d 390], after stating the scope of the general rule, the court said: ''it is also true that that only is adjudged in a former judgment which appears upon its face to have been adjudged or which was actually and necessarily included therein or necessary thereto. . . . And when it affirmatively appears that an issue was not determined by the judgment, it obviously is not *res judicata* upon that issue. A judgment is not an adjudication as to matters which the court expressly refrains from determining.'' (Italics added.) In *Title Guarantee & Trust Co.* v. *Monson*, 11 Cal.2d 621 [81 P.2d 944], it is said: ''Nor is the rule applicable to rights, claims or demands, although growing out of the same subject matter, but which constitute separate or distinct causes of action, and which were not put in issue in the former action.'' ▮ A further general rule is that a judgment operates as an estoppel among the parties only when they are adversary parties in the original action. (Code Civ. Proc., § 1910; *Pomona College* v. *Dunn*, 7 Cal.App.2d 227 [46 P.2d 270]; *Standard Oil Co.* v. *J. P. Mills Organization*, 3 Cal.2d 128 [43 P.2d 797].)

The question as to any rights of the city of San Diego in waters originating above the Marron Dam Site was not put in issue in the Allen case, the action was tried on an entirely different theory, and any such issue was rather clearly excluded from consideration by the court in deciding that case. The matter of the releases and waiver of riparian rights on the part of landowners overlying this basin, which is now particularly relied on by the appellant, and which releases and waivers are now stated to be in favor of the city and owned by the city, was not sufficiently raised as an issue in the Allen case, and was not considered and passed upon by the judge except to the extent of noting that such an issue has not been supported by evidence or argument and that the court would assume that whatever relinquishments had

been alluded to did not run in favor of the water company "or furnish any subject for the court's consideration in this case." No issue as to the city's ownership of any such releases and waivers was ever raised in the Allen case, and no adversary issue relating to the existence of such releases or waivers was raised or presented as between the various plaintiffs and cross-defendants.

Under the rules of law to which we have referred, and which are now well established, we conclude that the judgment in the Allen case is not res judicata as between any of the parties to that action with respect to any rights of the city of San Diego in any of the waters of Cottonwood River or Pine Creek originating above the Marron Dam Site.

It may be further observed that the appellant relies upon the general rule that a judgment may be set aside in an equitable action brought for that purpose, on the ground of extrinsic fraud or mistake, where the unsuccessful party has been prevented from fully presenting his case by something done by the successful party which amounts to extrinsic fraud and which had the effect of preventing an adversary trial or decision of the issues in the case. (See *Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317]; *Caldwell* v. *Taylor,* 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194]; *Sontag* v. *Denio,* 23 Cal. App.2d 319 [73 P.2d 248].) Not only was the appellant a successful party in the Allen case but its complaint in the instant case seeks relief not because of the acts of one of the other parties but because of a supposed oversight on the part of one of its own counsel in failing to see something which no one else connected with the case has been able to see, and which this court is still unable to see. While not essential here, in view of our holding on the main point presented, it may be observed that for numerous reasons the charge of constructive fraud on the part of one of the city's counsel in the Allen case does not appear to be well founded, even if the allegations of the complaint be accepted as true.

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.