[Civ. No. 24652. Second Dist., Div. Two. June 29, 1961.]

TRUCK INSURANCE EXCHANGE (an Interinsurance Exchange), Plaintiff and Appellant, v. JOE C. TORRES et al., Respondents; GORDON R. CARROLL et al., Defendants and Appellants.

Hagenbaugh, Murphy & Meifert, Sigurd E. Murphy and Henry F. Walker for Plaintiff and Appellant.

Joseph G. Hurley for Defendants and Appellants.

Crider, Tilson & Ruppe, Robert D. Brill and Henry E. Kappler for Respondents.

Joseph L. Spray for Amici Curiae on behalf of Respondents.

ASHBURN, J.—Controversy between two insurers (Truck Insurance Exchange and Federal Insurance Company) as to which must pay the judgments for personal injuries growing out of an automobile accident covered by both of them. The accident occurred on March 6, 1955, a collision between a GMC tractor with half trailer, driven by one Rodriquez as the employee of Joe Torres, and a Ford driven by Gordon R. Carroll and containing other members of the Carroll and Pullara families. For injuries so received the Carrolls and Pullaras recovered judgments against Rodriquez and Torres aggregating $18,850, which have become final.[1]

At the time of the accident plaintiff, Truck Insurance Exchange, had outstanding a policy covering Joe Torres as named insured and his driver Rodriquez as additional assured; it defended the actions which resulted in said judgments against Torres and Rodriquez; later it brought this action for declaratory relief to determine whether defendant Federal Insurance Company is obligated to pay all or any part of

---

[1] By the time of trial all parties of record had been eliminated except the personal injury plaintiffs, the insurance companies, and the defendants Rodriquez and Torres.

the judgments. Federal had outstanding at the time of the accident a policy covering Richard George as named insured. The trial court exonerated Federal from liability; Exchange and the Carrolls and Pullaras appeal.

The primary controversy arises from the fact that the tractor and half trailer were sold by a dealer, Richard George, to Joe Torres on conditional sale contract on May 28, 1954, and no white or pink slip was ever delivered to the buyer and no dealer's notice given to the Department of Motor Vehicles until April 4, 1955, a month after occurrence of the accident; no other attempt to comply with the provisions of the Vehicle Code was made. This failure to comply with the statute (§§ 177, 178, 186)[2] left the conditional vendor liable as owner under section 402. (*Stoddart* v. *Peirce*, 53 Cal.2d 105, 115, 120 [346 P.2d 774].)

It is argued that George was not shown to be the owner at the time of sale to Joe Torres and hence the rule just stated is inapplicable, but we find this untenable. George was a dealer in trucks and equipment; he had bought the tractor from *Mike* Torres and claimed to be the owner; he testified to the fact of ownership and that is enough to constitute prima facie proof (see Witkin on California Evidence, § 180, p. 200). Moreover, George was in possession of the tractor and semitrailer when he undertook to sell them and he delivered possession to the buyer, Joe Torres, and the latter continued in possession. From these facts a presumption of ownership arose (Witkin on California Evidence, § 73, p. 93) and that presumption was not countered in any way.

But independent proof of George's ownership was not necessary; the conditional vendor who does not comply with the statute is an "owner" for the purposes of section 402. "[T]he rule is now well settled that a conditional vendor is considered the owner of a vehicle and the conditional vendee is held to be the operator with permission of the owner, where the vendor delivers possession to the vendee and fails to comply with section 177 with reference to giving notice of the transfer prior to the occurrence of the accident." (*Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.*, 130 Cal.App.2d 158, 162 [278 P.2d 493].) "There is no doubt that the word 'owner' as used in section 402 for the purpose of creating a liability thereunder, is not synonymous with that

---

[2] We refer herein to code sections as they existed and were numbered before the revision of 1959.

word as used in the ordinary sense of referring to a person or persons whose title is good as against all others. Under the Vehicle Code there may be several such 'owners' at any one time. One or more persons may be an 'owner,' and thus liable for the injuries of a third party, even though no such 'owner' possesses all of the normal incidents of ownership (*Dorsey* v. *Barba,* 38 Cal.2d 350, 353 [240 P.2d 604])." (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 115.) See also *Harbor Ins. Co.* v. *Paulson,* 135 Cal.App.2d 22, 25 [286 P.2d 870].

■■■ It thus appears that George was an "owner" whose liability under section 402 had continued to the time of accident because of his failure to comply with sections 177, 178 and 186, Vehicle Code. As stated in Traders Insurance case, *supra,* at page 164, "it would be paradoxical indeed if under these circumstances one is held to be the owner under the law but not under his insurance contract." That George was the named insured in the Federal policy is undisputed.

The driver Rodriquez, and the conditional owner Joe Torres, as well as the vendor George, were thus covered with respect to this accident by the Federal policy, and Rodriquez and Torres were covered by the Truck Insurance Exchange policy, Torres as named insured, and Rodriquez (his servant) as additional insured. Here arises the question of other insurance and the operation of such clauses in this instance.[3]

---

[3] We here enter a field which badly needs legislative action. A myriad of confusions has grown out of inability of insurers to agree upon the incidence or sharing of a common loss. The court said in *Firemen's Ins. Co.* v. *Continental Cas. Co.,* 170 Cal.App.2d 698, 700 [339 P.2d 602]: "There are three types of limiting clauses in 'other insurance' provisions: (1) a 'prorate' clause provides for apportionment of a loss with other valid and collectible insurance; (2) an 'excess' clause provides coverage for loss only in excess of other valid and collectible insurance; and (3) an 'escape' clause attempts to avoid all liability where there is other valid and collectible insurance. . . . There has been a great deal of confusion in the decisions of other states in passing upon 'other insurance' clauses. As stated in *Oregon Auto. Ins. Co.* v. *United States Fidelity & Guar. Co.,* 195 F.2d 958, 'These decisions point in all directions.' . . . Even in California there has been some conflict in the decisions on the subject."

The multiplicity of problems arising from this type of litigation between insurers is made clear in 5 Stanford Law Review 147, *"Other Insurance" Clauses Conflict.* The types of controversies are summarized as Escape clause v. excess clause, Excess v. prorate, Escape v. prorate, Prorate v. prorate, Excess v. excess, Escape v. escape. The insurance companies, probably as a matter of necessity, bring the personal injury plaintiffs into declaratory relief actions which often are brought before any judgment has been rendered in the personal injury case. These claimants are thus faced with employment of lawyers to litigate insur-

The policy of plaintiff Exchange says: "The insurance afforded by this policy shall be excess insurance over any other insurance available to the insured, either as an insured under a policy applicable with respect to the automobile, or otherwise, against a loss covered by this policy." The Federal policy: "If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limits of liability stated in the declarations bear to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, that the insurance under this policy shall be excess insurance with respect to loss against which the named insured has other insurance disclosed to the company as in effect on the effective date of this policy and upon the basis of which the premium for the insurance under this policy is modified, but in such event the insurance under this policy shall apply only in the amount by which the applicable limit of liability stated in the declarations exceeds the applicable limit of liability of such other insurance.

"With respect to any valid and collectible insurance covering automobiles not owned by or registered in the name of the named insured and which extends to the benefit of the named insured, the insurance under this policy shall be excess insurance."

The Exchange policy provides in case of other insurance for excess insurance only; Federal's policy provides first for proration of the loss; the *proviso* in the first quoted paragraph is not applicable to the facts at bar and hence may be disregarded in our further discussion; the last paragraph distinctly spells excess insurance within certain narrow limits.

In approaching our specific problem it is well to remember what was said in *American Auto. Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App.2d 192, at page 195 [318 P.2d 84]: "The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract,

---

ance coverage while engaged in establishing their right to a judgment for damages. Often they are unable to bear this additional financial burden. In the case before us the Carrolls and Pullaras have been actively represented in the personal injury suits, this declaratory relief action brought by Exchange and an appeal of their own from the judgment therein. We are persuaded that definite statutory rules which will obviate this large volume of intricate litigation would be plainly in the public interest.

for their agreements are not with each other. See *Offer* v. *Superior Court,* 194 Cal. 114, 118 [228 P. 11]; *Fireman's etc. Co.* v. *Palatine Ins. Co.,* 150 Cal. 252, 256 [88 P. 907]. Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.''

 Comparing the Exchange provision with the first portion of the quotation from the Federal policy it appears plain from the language that Federal coverage is "available to the insured" to the extent of Federal's share of a prorated loss based upon policy limits; hence, the Exchange excess insurance becomes operative with respect to the balance of the loss and the net result is proration in accordance with the terms of the Federal policy. Such has been the holding in similar situations. (*American Auto. Ins. Co.* v. *Seaboard Surety Co., supra,* 155 Cal.App.2d 192, 199; *Air etc. Co.* v. *Employers' Liab. etc. Corp.,* 91 Cal.App.2d 129, 133 [204 P.2d 647]; *Peerless Cas. Co.* v. *Continental Cas. Co.,* 144 Cal.App.2d 617, 621 [301 P.2d 602].) This additional quotation from *American Auto. Ins. Co.* v. *Seaboard Surety Co., supra,* page 199, is pertinent: "This case lends itself to solution upon the basis of these policy provisions independently of the equities which in proper cases, as in subrogation instances, override the exact terms of the policies in the interest of substantial justice. The [Federal] provision renders it liable for its pro-rata portion of the loss . . . and the insured after paying can collect that much and no more from that insurer. It was so held in *Fidelity etc. Co.* v. *Fireman's Fund Indem. Co.,* 38 Cal.App.2d 1, 5 [100 P.2d 364]. Hence the policy is to that extent 'good, valid and collectible' other insurance within the purview of the [Exchange] policy, which in that event protects the insured with excess insurance 'over and above the amount of any such other good, valid and collectible insurance,'—namely, to the extent of one-half of the total loss.''

We are not troubled here with the disturbing thought (as was the Supreme Court in *American Automobile Ins. Co.* v. *Republic Indemnity Co.,* 52 Cal.2d 507, 512 [341 P.2d 675]) that our "reasoning has been referred to as circular, depending on which policy one happens to read first." Having determined the matter from the standpoint of the Exchange policy

we now make a fresh start and find that Federal's policy specifies only prorata coverage where there is other insurance and, that being the limit of its liability, the excess provision of the Exchange policy begins to operate and in filling the vacuum develops as a practical matter into prorata coverage.

What we have just said relates to the first portion of the Federal paragraph referring to other insurance. The last paragraph of that text is not applicable; it could not possibly fit any vehicle other than the George tractor and semitrailer, and while he had never registered same in his name he continued to be the owner, both in the sense that it should have been registered in his name and that as a matter of common law the title still stood in him.

If, perchance, both policies were held to afford only excess coverage the result would be that equity would require proration in order that insurers who had undertaken a single and common burden should not be absolved entirely. (See *Oil Base, Inc.* v. *Transport Indem. Co.*, 143 Cal.App.2d 453, 468 [299 P.2d 952]; *Employers etc. Corp.* v. *Pacific etc. Ins. Co.*, 102 Cal.App.2d 188, 191 [227 P.2d 53]; *Peerless Cas. Co.* v. *Continental Cas. Co.*, *supra*, 144 Cal.App.2d 617; *Oregon Auto. Ins. Co.* v. *United States Fidelity & Guar. Co.*, (9 C.C.A.) 195 F.2d 958; *Continental Cas. Co.* v. *St. Paul Mercury F. & M. Ins. Co.*, (D.C.Fla.) 163 F.Supp. 325; 69 A.L.R. 2d 1122, 1124.)

*American Automobile Ins. Co.* v. *Republic Indemnity Co.*, *supra*, 52 Cal.2d 507, upon which appellant relies is not controlling for the factual situation is plainly distinguishable. It there appeared that Steinberg was driving a courtesy car belonging to Barish. They were covered by separate insurers, language concerning other insurance being substantially the same in both policies. At pages 511-512, the court said: "The clauses consist of two parts; the first provides generally for prorating where there is other insurance covering the loss, and the second provides, as a specific exception, that when the named insured is driving a car not owned by him the insurance will be excess over all other insurance. Because American's named insured, Steinberg, was driving another person's car, American's insurance falls within the exception specified in its policy if the insurance of Republic is treated as other insurance. On the other hand, Republic's insurance comes under the prorate provision in its policy if American's insurance is treated as other insurance.

"Where 'other insurance' clauses of this type appear in

492

the automobile liability policies of both the driver and the owner, the cases have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy.'' Clearly that is not the situation presented at bar and the rule there announced and applied is not controlling upon the facts before us.

 Rodriquez was operating a tractor and semitrailer which were hitched together and moving as a single unit. They were sold by George to Joe Torres through a single conditional sale contract; hence they had equal status under the Vehicle Code and the principles discussed above are fully applicable to both. Counsel for Federal contend, however, that its policy named only the tractor and that somehow this affects the whole liability situation. If this be factually true, we do not think the suggested result follows. Hitched together as they were the tractor and trailer constituted a single vehicle (*cf. Miller* v. *Berman,* 55 Cal.App.2d 569, 571-572 [131 P.2d 18]). Rodriquez, in the front of the tractor, ran a boulevard stop sign and the front of the tractor struck the left front side of the Carroll car. It is impossible to see how the fact that it had a trailer attached to it could lessen the obligation of the insurer to protect its two ''additional insured,'' Rodriquez and Torres.

 Respondent and amici curiae argue that plaintiff is precluded from holding George and his insurer Federal liable because of res judicata. There was no such plea entered, nor was the point urged at the trial.[4] Be that as it may, the contention cannot be sustained. Its nourishment comes from the fact that the personal injury complaint alleges that Torres at the time of accident was the registered owner of a tractor and trailer (which allegation was denied) and that George negligently serviced, maintained, inspected and reconditioned the tractor-trailer,—the claim being that no attempt was made to hold George as owner, and that the judgment for plaintiffs

---

[4]This is illustrated by the following passage quoted from the transcript:

''*The Court:* Maybe I missed your point. *Mr. Brill:* . . . The thought in my mind is this, that there never has been any finding of ownership in George of this vehicle. . . . In the absence of some finding that George is the owner, which is the first barrier to even a discussion of the omnibus clause, or any of the other policy provisions, neither Torres nor Rodriquez could be considered additional insureds under the Federal policy. *The Court:* I follow that, *and the two earlier judgments did not determine that?* Mr. Brill: *That is correct, your Honor. They simply determine liability of Torres and Rodriquez.*'' (Italics added.)

establishes Torres' liability as that of registered owner and hence George and his insurer cannot be held in that same capacity. But the complaint also alleged Rodriquez to have been the agent, servant and employee of Torres, and that allegation was admitted by Torres' answer. The record seems to require the inference that Torres was held liable on the theory of respondeat superior, as witness the fact of a verdict in favor of Juanita Carroll in excess of the statutory limit. But these considerations are not determinative.

The basic applicable rule is that a judgment is res judicata only between parties who are litigating with each other, ordinarily not so operative with respect to codefendants. Truck Insurance Exchange defended the action on behalf of Torres and Rodriquez. This undoubtedly established that Exchange is liable to them and to the plaintiffs in that action to make payment of the judgments, now final. (*Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 631 [40 P.2d 311]; *Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201, 206 [318 P.2d 94].) But Federal, though participating in some preliminaries to the trial, was not present at that time. No pleading was filed by it or by Exchange in its own right. No issue was drawn between the two insurers. They were not litigating with each other and between them the judgment is not binding as to any of the subsidiary issues or as to the major question whether they are to share the burden of the judgment.

"[I]t is fundamental as to the doctrine in *res judicata* that before the former adjudication may operate as an estoppel as to issues in the later action, there must be an identity of parties, as well as an identity of issues." (*Standard Oil Co.* v. *John P. Mills Organization,* 3 Cal.2d 128, 139 [43 P.2d 797].) Section 1910, Code of Civil Procedure, says: "The parties are deemed to be the same when those between whom the evidence is offered were on opposite sides in the former case, and a judgment or other determination could in that case have been made between them alone, though other parties were joined with both or either." There are numerous cases in this state to the effect that a judgment is not res judicata as to codefendants. (*Victor Oil Co.* v. *Drum,* 184 Cal. 226, 239 [193 P. 243]; *Tanaka* v. *Highway Farming Co.,* 76 Cal.App. 590, 594 [245 P. 434]; *City of San Diego* v. *California Water & Tel. Co.,* 71 Cal.App.2d 261, 276 [162 P.2d 684]; *County of Los Angeles* v. *Continental Corp.,* 113 Cal.App.2d 207, 222 [248 P.2d 157]; *Allen* v. *California Water & Tel. Co.,* 29 Cal.2d 466, 491 [176 P.2d 8], are a few

of them. See also 15 Cal.Jur. § 217, p. 186.) The cases having direct application to the question of the effect, as between the defendants, of a judgment in favor of plaintiff and against one or more of them, are collected in notes in 101 American Law Reports 104; 142 American Law Reports 727; 152 American Law Reports 1066. They are thus summarized in 101 American Law Reports at page 105: ''While the cases are not entirely in harmony, sometimes even in the same jurisdiction, the rule supported by the great weight of authority is that a judgment in favor of the plaintiff in an action against two or more defendants is not res judicata or conclusive of the rights and liabilities of the defendants inter se in a subsequent action between them, unless those rights and liabilities were expressly put in issue in the first action, by cross complaint or other adversary pleadings, and determined by the judgment in the first action.'' And in 142 American Law Reports at page 728: ''The same conflict of authority prevails in the later cases, with the weight of authority, as in the older cases, supporting the view that the judgment in favor of the plaintiff in the former action is not res judicata or conclusive, in a subsequent action between the codefendants, of their rights and liabilities inter se, unless those rights and liabilities were expressly put in issue in the first action by cross complaint or other adversary pleadings, and determined by the judgment therein.'' In *Merrill* v. *St. Paul City Ry. Co.*, 170 Minn. 332 [212 N.W. 533]; *Pearlman* v. *Truppo*, 10 N.J. Misc. 477 [159 A. 623]; 10 N.J. Misc. 772 [160 A. 334]; *Snyder* v. *Marken*, 116 Wash. 270 [199 P. 302, 22 A.L.R. 1272]; *United States Fid. & Guar. Co.* v. *Thomlinson-Arkwright Co.*, 172 Ore. 307 [141 P.2d 817, 824], it is pointed out that mere assertions in separate answers that the other defendant was at fault do not make the codefendants adversaries where no cross-pleading is filed. *Bernhard* v. *Bank of America*, 19 Cal.2d 807, 813 [122 P.2d 892], prescribes as one of the elements of res judicata an affirmative answer to this question: ''Was the issue decided in the prior adjudication identical with the one presented in the action in question?'' The case has been cited many times to this effect.

*Hardy* v. *Rosenthal*, 2 Cal.App.2d 442 [38 P.2d 412], seems to be controlling. One Stoffel sued H. J. Hardy, his employee J. W. Nicholson, and one T. Rosenthal. Automobiles driven by Nicholson and Rosenthal collided on the highway and traveled thence to plaintiff's house and swept it from its

foundations. Stoffel recovered judgment, which was paid by Hardy and Rosenthal. Hardy then sued Rosenthal to recover his own damages. Defendant claimed the former judgment holding both parties liable to Stoffel was a bar to the action. That claim was rejected. The court said, at page 445: "It is apparent that to constitute a judgment in one case a bar to the prosecution of a second action, there must have been an identity of a question litigated in the two cases which would form the basis of a recovery in the second case. Such identity is entirely lacking in the two cases we are considering." And at page 446: "It is true that both Drum and the plaintiff were parties defendant in the action in which the judgment was rendered, but the judgment was not between them, but between them on the one side and the plaintiff in that action on the other. A judgment may operate as an estoppel between parties to it only when they are adverse parties, so that the judgment is a determination of issues between them. (Code Civ. Proc., § 1910; 23 Cyc. 1237.)"

The claim of res judicata does not lie in the case before us.

Federal relies upon "Exclusion 13" of its policy as an exemption from liability for the instant loss. By endorsement there had been added to the Federal policy before the accident an exclusion clause which, with the introductory phrase of the policy, says: "This policy does not apply: . . . Exclusion 13. To the use by the insured of any automobile as a public or livery conveyance or for carrying property for a charge." Federal claims that this immunized it from any obligation to protect its insured with respect to the negligence action and judgment, but it did not plead any such defense. It appears that Torres had, as a licensed radial highway common carrier, transported from Tracy to March Field certain miscellaneous freight which was delivered on March 3 or 4; this was done by means of the GMC tractor and trailer, with Rodriquez driving. After making the delivery he had visited his grandmother for two or three days and was on his way back to Tracy at the time of the accident; the truck was empty, not carrying any property whatever.

Respondent does not seriously argue that the vehicle was being used as "a public or livery conveyance," nor could it successfully do so. (*Cf. Pimper* v. *National American Fire Ins. Co.*, 139 Neb. 109 [296 N.W. 465]; *Elliott* v. *Behner,* 150 Kan, 876 [96 P.2d 852, 857]; *Allor* v. *Dubay,* 317 Mich. 281

[26 N.W.2d 772]; *Rathbun* v. *Ocean Accident & Guarantee Corp.*, 299 Ill. 562 [132 N.E. 754, 755, 19 A.L.R. 140]; *Larson* v. *Aetna Life Ins. Co.*, 19 Wn.2d 601 [143 P.2d 850, 851, 149 A.L.R. 1289]; 1 Appleman, Insurance Law and Practice, § 576, p. 716; Cyclopedia of Automobile Law and Practice, Blashfield, vol. 6, § 3700, pp. 308-309.)

But respondent asserts that every carrying of property for a charge must involve a return trip and the exclusion clause reasonably covers the round trip. This view is precluded by the settled principle that the language of an insurance policy, being that of the insurer, is to be construed against it in case of any ambiguity. ■ *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914] : "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." *Fageol Truck & Coach Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731, 747 [117 P.2d 661] : "But if there be any ambiguity in the Detroit policy, it must be resolved against the insurer. (32 C.J. 1152, § 265.) If to give the quoted clause the meaning contended for would release Detroit from liability, then it must be construed so as to permit recovery since it is 'susceptible of such construction.' Where two interpretations equally fair may be made, that which affords the greatest measure of protection to the assured will prevail." ■ This Exclusion 13 avails Federal nothing. This holding dispenses with discussion of other arguments advanced in this connection, such as invalidity of the exclusion clause.

The foregoing discussion disposes of all the contentions made by respective counsel which we deem it necessary to review, for they are dispositive of this appeal. Counsel present numerous other arguments but we consider that due regard for justifiable complaints against inordinately long opinions and increasing costs of necessary legal literature, such as official reports and advance sheets, demands that we not satisfy

counsels' natural desire for a detailed explanation of our subsidiary rulings and that we now refrain from further comment.

The judgment is reversed with instructions to the trial court to make new or amended findings and judgment not inconsistent with the views herein expressed and imposing proportional liability upon Truck Insurance Exchange and Federal Insurance Company for payment of the existing judgments in favor of the Carrolls and Pulleras which are described in the pleadings herein.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

The petition of respondent Federal Insurance Company for a rehearing was denied July 25, 1961, and its petition for a hearing by the Supreme Court was denied August 23, 1961. White, J., did not participate therein.

*Assigned by Chairman of Judicial Council.