[Civ. No. 29874.   Second Dist., Div. Five.   Apr. 28, 1967.]

UTICA MUTUAL INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant, v. MONARCH INSURANCE COMPANY OF OHIO, Defendant, Cross-complainant and Respondent; GEORGE WOELKE, et al., Defendants, Cross-defendants and Respondents.

Ives, Kirwan & Dibble and Darwin L. Dibble for Plaintiff, Cross-defendant and Appellant.

Sweeney, Irwin, Cozy & Foye and Thomas P. Foye for Defendant, Cross-complainant and Respondent.

No appearance for Defendants, Cross-defendants and Respondents.

HUFSTEDLER, J.—Utica Mutual Insurance Company ("Utica") filed a complaint against Monarch Insurance Company of Ohio ("Monarch"), George Woelke, George Woelke, Jr., and Angus McDonald, seeking a judgment declaring that Monarch's policy of insurance upon Woelke's Ford automobile, which Utica also insured, was in effect on July 8, 1962, the date of an accident out of which grew a pending action by McDonald against the Woelkes, and declaring that Monarch contribute to Utica half of Utica's litigation expenses and half of the amount of any judgment or settlement for which Utica may become liable in the McDonald action.

Monarch answered, denying any liability, and filed a cross-complaint against the Woelkes, Utica and McDonald for reformation of its contract of insurance with George Woelke. Monarch's cross-complaint averred that Monarch and George Woelke orally agreed that that portion of its policy with George Woelke covering his Ford automobile would take effect upon the expiration of Utica's policy on the Ford. Due to a mistake in reducing the agreement to writing, the Ford automobile was included for the policy period commencing April 22, 1962, and not upon the expiration date of the Utica policy, July 11, 1962. When the error was discovered, Monarch issued a credit memorandum to Woelke for the premium he paid on the Ford from April 22, 1962, to July 11, 1962, and on July 16, 1962, issued an endorsement reflecting the change in the policy. The policy was canceled on July 26, 1962, and the balance of the unearned premium was refunded to Woelke. Utica denied the material averments relating to reformation and asserted that Monarch's 20-month delay in instituting its suit for reformation constituted laches barring equitable relief. The Woelkes answered and counterclaimed against Monarch. At the time of trial, it was stipulated that McDonald's claim against the Woelkes had been settled and that Utica had paid McDonald $8,750 in full satisfaction of McDonald's claim. Upon settlement of McDonald's claim, the declaratory relief and reformation actions were dismissed against him.

The trial court sitting without a jury reformed the Monarch insurance policy, excluding the Ford from coverage for the period April 22, 1962, to July 11, 1962, and denied relief to Utica and the Woelkes. The Woelkes have not appealed.

Utica contends on appeal that certain of the court's find-

ings were not supported by the evidence and that reformation was inequitable because Utica's rights had intervened.

## Summary of the Evidence

Viewing the record most favorably to respondent, the following facts appear: In March or April of 1962 Marshott, an agent for Monarch, and George Woelke orally agreed to insure Woelke's business and his Studebaker automobile, to take effect immediately, and to insure Woelke's Ford automobile upon the date that Utica's policy on the Ford expired. Marshott and Woelke knew that the Utica policy would expire some time between June and August of 1962, but neither knew the precise date of expiration of the Utica policy until after their initial meeting. Monarch wrote the policy, including coverage of the Ford commencing April 22, 1962, and delivered the policy to Woelke. When Woelke read the policy on June 27, he discovered that it insured the Ford during the unexpired portion of the Utica policy, called Marshott's attention to the error and told him the date of expiration of Utica's policy. Marshott acknowledged the error and told Woelke that he would be given credit for the overlapping policy period. Marshott called Adams, a Monarch underwriter, on July 2, 1962, and relayed to her the information Woelke had given him. Adams thereafter issued an endorsement dated July 16, 1962, deleting the Ford from coverage during Utica's policy period. Woelke received a notice of cancellation from Monarch dated July 16, 1962, to take effect July 26, 1962.

Woelke testified that shortly after the accident he called the Monarch office and told an unidentified woman about the accident and requested that someone from Monarch contact him with regard to his claim, but neither Marshott nor any other identified person employed by Monarch was informed of the accident until some time in August. On August 14, 1962, Utica's letter requesting contribution was received by Adams, and later that month Woelke's accident report was received. On October 2, 1962, Woelke presented bills to Monarch for his expenses growing out of the accident. Monarch denied liability and refused to pay the claims of Utica for contribution and of Woelke for reimbursement of his expenses.

## Evidence Sufficient to Warrant Reformation

"The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." (*Lemoge*

*Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 663 [297 P.2d 638].) ▮ The evidence amply sustained the essential findings necessary to obtain reformation of the insurance contract. Woelke and Monarch intended to cover the Ford only from and after the expiration of the Utica policy. Due to a mistake in the writing of the policy, the Ford was included during Utica's policy period, and the agreement as thus written did not reflect the antecedent oral agreement between the parties to the contract. ▮ The power of a reviewing court begins and ends with a determination whether there is any substantial evidence to support the trial court's findings. ''The principle is as applicable in a case to which the rule of clear and convincing proof applies as it is in other cases. The statement found in many cases that to establish a particular fact the evidence must be clear and convincing is a rule of evidence directed to the trial courts. (*Ward* v. *Waterman*, 85 Cal. 488, 503 [24 P. 930] ; *Brison* v. *Brison*, 90 Cal. 323, 334 [27 P. 186] ; *Mahoney* v. *Bostwick*, 96 Cal. 53, 58 [30 P. 1020] ; *Sullivan* v. *Moorhead*, 99 Cal. 157, 161 [33 P. 796] ; *Sherman* v. *Sandell*, 106 Cal. 373, 375 [39 P. 797] ; *Ford* v. *Ford*, 44 Cal.App. 415, 418 [186 P. 164] ; *Alvarez* v. *Ritter*, 67 Cal.App.2d 574, 577 [155 P.2d 83] ; *Bisno* v. *Herzberg*, 75 Cal.App.2d 235, 237 [170 P.2d 973]. Cf. *Hobart* v *Hobart Estate Co.*, 26 Cal.2d 412, 445 [159 P.2d 958].) Whether the evidence is clear and convincing must be determined by the trial court and this court must accept that determination as conclusive if there is substantial evidence to support it.'' *Baines* v. *Zuieback* (1948) 84 Cal.App.2d 483, 488 [191 P.2d 67].

▮ Utica challenges the sufficiency of the evidence to support certain portions of the findings numbered 12 and 13. Utica attacks the statements appearing in both findings to the effect that Monarch learned about the expiration date of Utica's policy before the date of the accident. The evidence was sufficient to support the findings in that respect. There was evidence that Marshott had conveyed to Adams the information about Utica's policy between June 29, 1962, and July 2, 1962, following a conversation which Marshott had with Woelke, and that the date of the conversation between Woelke and Marshott was fixed by Woelke as June 27, 1962. Moreover, the precise date upon which Monarch learned that the Utica policy was due to expire is not a material fact essential to the judgment, but is, at most, an evidentiary fact.

Utica also attacks that part of finding numbered 13 stating

that Woelke requested cancellation of the Monarch policy. As Utica correctly points out, the evidence established that Monarch, not Woelke, instituted cancellation of the policy. The error, however, does not affect the judgment because the availability of reformation in no way depended upon which of the parties to the contract initiated cancellation. If the policy had been effectively canceled, thereby deleting coverage during the period in which the accident happened, there would have been no occasion for seeking reformation. Whatever significance might have attached to the identity of the person initiating cancellation if the action were one to obtain judicial confirmation of an antecedent rescission of the insurance contract, that fact is nevertheless not material in a proceeding to reform the insurance policy.

### Laches Did Not Bar Reformation

■ Utica did not prove laches, assuming *arguendo* that Utica has standing to raise the defense of laches to foreclose reformation of a contract to which it was not a party, a beneficiary or a successor in interest. Laches is not mere delay. It is unreasonable delay in commencing an action which has prejudiced the party asserting the defense. (*E.g., Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 343 [15 Cal.Rptr. 71, 364 P.2d 247]; *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 459-460 [326 P.2d 484]; *Gibson* v. *Mitchell* (1937) 9 Cal.2d 718, 725-726 [72 P.2d 740]; *Rouse* v. *Underwood* (1966) 242 Cal.App.2d 316, 323 [51 Cal.Rptr. 437].) Laches is an affirmative defense, the burden of pleading and proving of which rests upon the party asserting it, unless laches is disclosed from the face of the complaint. (*Victor Oil Company* v. *Drum* (1920) 184 Cal. 226, 242-243 [193 P. 243]; *Oscar Krenz Copper & Brass Works, Inc.* v. *Shamgochian* (1928) 92 Cal.App. 368, 370-371 [268 P. 488]; *cf. Curbelo* v. *Matson Navigation Co.* (1961) 194 Cal.App.2d 305, 308-309 [14 Cal.Rptr. 913].) Laches is not disclosed on the face of a complaint in which, as here, the delay in commencing the action is less than the applicable statute of limitations in an analogous action at law. The four-year statute of limitations applicable to an action upon the written contract has not expired and, absent unusual circumstances, a cause of action for reformation is not barred by laches if a cause of action based upon the same contract is not barred by limitations. (*Gardner* v. *California Guarantee Investment Co.* (1902) 137 Cal. 71, 75 [69 P. 844].) The only other limitations provision

applicable to an analogous action at law is the three-year period prescribed for actions founded upon fraud or mistake. (Code Civ. Proc., § 338, subd. 4; *Vai* v. *Bank of America, supra,* 56 Cal.2d 329, 343.)

Utica has not proved that it suffered any legal detriment by reason of the failure of Monarch earlier to assert its reformation action. Utica neither undertook the defense of the McDonald action nor paid the settlement in reliance on Monarch's delay in seeking reformation. It did those acts because it had a contractual duty to its assured to do them and not because it relied upon Monarch's delay in commencing its reformation suit. Utica was not damaged by delay in seeking to correct the error in the Monarch policy; it is merely suffering disappointment because the mutual mistake of Monarch and Woelke was corrected.

### *Reformation Not Inequitable*

■ Utica argues that Monarch should not have reformation because "Utica was an innocent party to the contract," and it should not be permitted to suffer from Monarch's error. Utica was not in any sense a party to Monarch's contract with Woelke and, as we have previously pointed out, it did not suffer from Monarch's error. The reciprocal rights and duties of coinsurers to one another do not depend upon contract, but upon the principles of equitable subrogation. (*Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]; *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483, 489-490 [14 Cal.Rptr. 408].) The equitable subrogation doctrine, however, has no application unless both insurance carriers have covered the same event. The doctrine cannot be invoked to prevent reformation of another insurance company's contract with its insured. Equitable subrogation rights are not rights acquired by Utica as a bona fide purchaser for value from either Monarch or Woelke growing out of Monarch's contract with Woelke. (*Cf. Baines* v. *Zuieback, supra,* 84 Cal.App.2d 483, 491.) The elimination of mistaken multiple coverage caused Utica no legal detriment. Utica had no equities to assert against Monarch.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.